UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| ANNE FRANCISCO, et al., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 4:17CV1455 HEA |
| | ) |
| CORIZON HEALTH, INC., et al., | ) |
| | ) |
| Defendants. | ) |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Defendant Villmer's Motion for Summary Judgment [Doc. No. 94]. Plaintiffs have filed their response in opposition. For the reasons set forth below, the Motion will be granted.

## Background

On May 6, 2017, Plaintiffs filed this action pursuant to 42 U.S.C. §1983 alleging violations of the Eighth Amendment. The action was brought based on claims that Defendant denied medical care to Plaintiffs' decedent, Joshua Francisco and enacted an official policy or unofficial custom in violation of Joshua's Eighth Amendment right to be free from cruel and unusual punishment. The claims against Defendant Villmer are brought against him in his individual capacity.

Defendant filed the instant motion, claiming he is entitled to summary judgment as Plaintiff cannot establish the elements of his claims. Defendant also filed its Statement of Material Facts ("SMF"), attaching several exhibits. Plaintiffs filed an opposition to Defendant's Motion and SMF.

## Summary Judgment Standard

"Summary judgment is proper where the evidence, when viewed in a light most favorable to the non-moving party, indicates that no genuine [dispute] of material fact exists and that the moving party is entitled to judgment as a matter of law." *Davison v. City of Minneapolis, Minn.*, 490 F.3d 648, 654 (8th Cir. 2007); Fed. R. Civ. P. 56(a). Summary judgment is not appropriate if there are factual disputes that may affect the outcome of the case under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of material fact is genuine if the evidence would allow a reasonable jury to return a verdict for the non-moving party. *Id*. "The basic inquiry is whether it is so one-sided that one party must prevail as a matter of law." *Diesel Machinery, Inc. v. B.R. Lee Industries, Inc.*, 418 F.3d 820, 832 (8th Cir. 2005) (internal quotation marks and citation omitted). The moving party has the initial burden of demonstrating the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (citation omitted). Once the moving party has met its burden, "[t]he nonmovant must do more than simply

show that there is some metaphysical doubt as to the material facts and must come forward with specific facts showing that there is a genuine issue for trial." *Id*. (internal quotation marks and citation omitted).

To survive a motion for summary judgment, the "nonmoving party must 'substantiate his allegations with sufficient probative evidence [that] would permit a finding in [his] favor based on more than mere speculation, conjecture, or fantasy.'" *Putman v. Unity Health System*, 348 F.3d 732, 733-34 (8th Cir. 2003) (quoting *Wilson v. Int'l Bus. Machs. Corp.*, 62 F.3d 237, 241 (8th Cir. 1995)). The nonmoving party may not merely point to unsupported self-serving allegations but must substantiate allegations with sufficient probative evidence that would permit a finding in his or her favor. *Wilson,* 62 F.3d 237, 241 (8th Cir. 1995). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmovant]." *Anderson,* 477 U.S. 242 at 252; *Davidson & Associates v. Jung,* 422 F.3d 630, 638 (8th Cir. 2005). "Simply referencing the complaint, or alleging that a fact is otherwise, is insufficient to show there is a genuine issue for trial." *Kountze ex rel. Hitchcock Foundation v. Gaines,* 2008 WL 2609197 at *3 (8th Cir. 2008).

## Facts

Defendant Villmer was the Warden at Farmington Correctional Center

3

("FCC") during October 2014.  Joshua David Francisco ("Francisco") committed suicide on October 22, 2014 at Farmington Correctional Center.

Lisa Sanderson, Corizon's Chief of Mental Health, notified Villmer of the need for an involuntary medication hearing on September 11, 2014. She informed Villmer Joshua needed involuntary psychotropic medication because he was a likely danger to himself. Villmer had no memory of Francisco before September 11, 2014. Francisco's involuntary medication hearing took place on September 16, 2014. Villmer heard staff detail Joshua's serious mental health issues and heard Joshua admit he had not been eating, cut himself, and said he needed therapy  Villmer had grave concerns for Francisco's well-being and recommended involuntary medication.

On October 8, 2014, Justin Ream emailed Villmer regarding Francisco's acceptance to Social Rehabilitation Unit ("SRU"). Acceptance to SRU told Villmer Joshua had a serious mental disorder. Villmer attended the Clinical Executive Committee meeting where Francisco's SRU approval was noted.

At the request of SRU staff, on October 16, 2014 Francisco attended a classification hearing and waived protective custody as required for entry to the SRU.

Villmer deferred to medical staff opinions regarding Francisco's mental health. Villmer trusted his medical staff.

4

Villmer made it very clear that mental health was important. Villmer was very pro mental health. Villmer supported efforts to increase mental health training.

Villmer did not directly train correctional staff on suicide policy. Villmer testified he "did not recall" attending suicide prevention training of his staff. He did testify part of his duties was to "make sure that the staff in my area were trained specifically on the policies that affected that area" Corizon provided annual suicide prevention training to DOC staff. Villmer had heard the phrase "magic words" before Joshua's suicide (Id. 58). He testified "magic words" was not DOC policy. He thought he "had a conversation with the unit manager or the assistant warden possibly to make sure that that was not the case." However, he did not recall insisting on training officers that "magic words" was not DOC policy or addressing "magic words" during annual suicide prevention training, or if there was follow-up done by his office or by DOC to determine whether staff understood suicide intervention training, prior to Joshua's suicide. Villmer conceded the suicide prevention training materials used for his staff did not contain the statement from DOC policy that staff should be aware of potentially suicidal prisoners when staff learn a prisoner "talks about suicide or self-injurious behavior with staff or other offenders ..." but "possibly, yes" should have.

Plaintiffs' corrections expert Emmitt Sparkman testified the training materials

5

should have contained DOC's suicide prevention policy. Villmer agreed the training materials did not address "magic words" but probably should have. Although the training materials state an officer should use his/her "judgment" whether an inmate was suicidal, Villmer admitted under DOC policy it was not the role of his corrections officers to determine whether a suicidal statement by a cellmate was fake, that was a mental health decision. Villmer admitted that the training materials should have clarified that issue, rather than potentially confusing it.

      Darrell Wagganer's memorandum indicated operational issues, including that an offender can be placed on suicide intervention status only if he utters "magic words," i.e., orally indicates he is going to harm himself. DOC's Office of Inspector General also informed Villmer there was inadequate staffing of the segregation unit: "The Post Orders for the HU 5 Wing Officer mandate security checks of each wing every 30 minutes utilizing the wing checklist. Video footage shows that no wing check was conducted of HU 5, D wing from 8:30 pm to 9:30 pm on 10/22/2014 while recreation was being completed in the recreation yard. The chronological log shows that an offender in the HU had requested protective custody during that time and had to be moved to another cell. In addition, a cell search was conducted during this time frame." Villmer's staff admitted Ad Seg was always short-staffed. Villmer agreed failure to perform wing checks during the

6

time Joshua committed suicide violated DOC procedure. Plaintiffs' correctional expert Sparkman opined warden Villmer was responsible for staffing of Ad Seg and found a constitutional violation.

"Magic Words" cultural issue was not brought to Villmer's attention. However, Villmer testified: "Q. Have you ever heard of a phrase magic words? A. Yes. Q. Okay. What's your understanding of that phrase with regard to the suicide? A. From the investigative report, then the offender would have to state he wished to do self-harm. Q. Prior to reading the investigative report back in 2014, had you ever heard that phrase before? A. Possibly prior to getting the investigative report." If that was his first awareness of this unconstitutional culture at his prison, Villmer was not administering his prison in accordance with constitutional requirements.

Villmer learned of this issue from the investigative report.

## Discussion

**Denial of Care**

Count 1 alleges Francisco was denied mental health care by disregarding the substantial risk that he was harmful to himself and was suicidal by intentionally refusing or intentionally failing to take reasonable measures to deal with the problem, including ordering necessary observation, placing him in the SRU and/or

7

sending him to a proper medical facility or CTS for psychological care and treatment.

In a jail suicide case, officials violate the Eighth Amendment prohibition on cruel and unusual punishment if they are deliberately indifferent to serious medical needs, including the risk of suicide. *A.H. v. St. Louis County*, 891 F.3d 721, 726 (8th Cir. 2018). Deliberate indifference is a rigorous standard, "akin to criminal recklessness, something more than mere negligence; a plaintiff must show that a prison official actually knew that the inmate faced a substantial risk of serious harm and did not respond reasonably to that risk." *Id*. (cleaned up). It requires "a showing that the official was subjectively aware of the risk." *Perry v. Adams*, 993 F.3d 584, 587 (8th Cir. 2021), citing, *Farmer v. Brennan*, 511 U.S. 825, 829 (1994).

> When the claim is that "jailers fail[ed] to discover the decedent's suicidal tendencies," as in this case, the issue is whether a defendant "possess[ed] the level of knowledge that would alert him to a strong likelihood that [the decedent] would attempt suicide." *Bell v. Stigers*, 937 F.2d 1340, 1343-44 (8th Cir. 1991) (cleaned up), overruled on other grounds by *Farmer*, 511 U.S. at 829, 114 S.Ct. 1970. A showing of negligence is insufficient. See *Lambert v. City of Dumas*, 187 F.3d 931, 937 (8th Cir. 1999). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838, 114 S.Ct. 1970.

*Leftwich trustee of statutory class of next of kin to Leftwich v. Cnty. of Dakota*, 9 F.4th 966, 972–73 (8th Cir. 2021).

8

The record establishes that Defendant Villmer's actions and/or inactions fail to satisfy the rigorous standard. The Chief of mental health services, Lisa Sanderson, informed Defendant of the need to involuntarily medicate Francisco. Villmer was present at the involuntary medication hearing.  He relied on Dr. Fisher's assessment and recommended the involuntary medicine be given.  Villmer was also notified of Francisco's acceptance into the Social Rehabilitation Unit.  He was unaware that Francisco had not been transferred to the Unit at the time of the suicide.

No reasonable jury could find that Villmer knew or must have known that Francisco had a substantial suicide risk. Villmer relied on the medical staff to assess and treat Francisco's mental condition.  He approved the recommendation that Francisco be involuntarily medicated, and he attended the hearing to place Francisco in the SRU because of his mental issues.  Villmer could reasonably rely on his medical staff to follow through with Francisco's treatment and placement. "Prison officials lacking medical expertise are entitled to rely on the opinions of medical staff regarding inmate diagnosis. . ." *Holden v. Hirner*, 663 F.3d 336, 343 (8th Cir. 2011). Nothing in the record establishes that Villmer knew Francisco had not been transferred to the SRU.  There is no evidence Villmer knew of the risk of suicide and failed to act.

**Custom, Practice or Policy**

Section 1983 liability for a constitutional violation may attach to a *municipality or* if the violation resulted from (1) an "official municipal policy," *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 691 (1978), (2) an unofficial "custom," *id*.; or (3) a deliberately indifferent failure to train or supervise, *see City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). "[A] plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating '(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.' *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014)." *Corwin v. City of Indep., MO.*, 829 F.3d 695, 699–700 (8th Cir. 2016). Villmer is not a proper party to a claim for an unconstitutional policy, custom or practice. The Complaint fails to allege any actions by Villmer regarding failure to train or supervise the other defendants. He is therefore entitled to judgment as a matter of law on the unconstitutional custom claim.

## Conclusion

Based on the foregoing analysis, Defendant is entitled to summary judgment on each of Plaintiff's claims.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Villmer's Motion for Summary Judgment [Doc. No. 94] is **GRANTED**.

A separate judgment in accordance with this Opinion, Memorandum and Order will be entered upon the resolution of the remaining claims in this matter.

Dated this 15th day of November 2022.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE